**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Laura Guthrie and Leonard Roy on behalf of Gina Roy,

Plaintiffs,

v.

Circle of Life,

Defendant.

Civil No. 00-1869 (DWF/RLE)

**MEMORANDUM OPINION AND ORDER**

---

Sonja D. Kerr, Esq., Kerr Law Office, 5972 Cahill Avenue, Suite 110, Inver Grove Heights, Minnesota 55076, appeared on behalf of Plaintiffs.

Zenas Baer, Esq. and Anita A. Flatt, Esq., Zenas Baer & Associates, 331 6th Street, P.O. Box 249, Hawley, Minnesota 56549, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on August 17, 2001, pursuant to the parties' Cross-Motions for Summary Judgment and Defendant's Motion to Dismiss or in the Alternative to Transfer the Case to the White Earth Band of Chippewa Tribal Court. By their current suit, Plaintiffs seek attorney's fees under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* For the reasons set forth below, Defendant's Motion to Dismiss or in the Alternative to Transfer the Case to the White Earth Band of Chippewa Tribal Court is granted such that the current action is

FILED NOV 21 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

stayed pending a decision by the tribal court. Accordingly, the Court declines to reach the merits of the parties' Cross-Motions for Summary Judgment at this time.

**Background**

Plaintiffs Laura Guthrie and Leonard Roy brought the current action to recover attorney's fees and costs expended in an administrative action on behalf of their daughter Gina Roy, under the Individuals with Disabilities Education Act ("IDEA" or "the Act" ). Gina Roy is a fifteen-year-old young person who has been diagnosed with Goldenhar Syndrome, the manifestations of which are a hearing loss and mental impairment. In the preceding administrative action, Plaintiffs challenged the determination of Gina's special needs and whether she was being provided a "free and appropriate education," as IDEA requires, while she attended the Circle of Life School in White Earth, Minnesota.

Leonard Roy and his daughter Gina are enrolled members of the White Earth Band of Chippewa Indians. The Circle of Life School ("Circle of Life") is located on tribal trust property and primarily serves the community of the White Earth Band of Chippewa Indians. Circle of Life receives financial support from the Bureau of Indian Affairs ("the BIA"), a division of the U.S. Department of Interior; and the White Earth Reservation Business Committee, a tribal organization, administers the funds.

By their cross-motions for summary judgment, the parties dispute the actual nature of the decision by the administrative law judge for purposes of whether Plaintiffs are entitled to fees and costs under IDEA. However, the parties also dispute whether the current action should even be before this Court. Thus, as a preliminary matter, the Court must first evaluate its jurisdiction in this case and decide Defendant's Motion to Dismiss or in the Alternative to Transfer the Case to the White Earth Band of Chippewa Tribal Court.

## Discussion

### 1. In General

Congress enacted IDEA to ensure that students with disabilities are provided with "a free and appropriate education." 20 U.S.C. § 1400. The Act and its corresponding regulations create a framework for the funding, execution, and enforcement of the special education entitlement. *Id.* Should a child and her parents or the child's school have a complaint under the Act, the parties have a right to a due process hearing, the contours of which are to be outlined at the state level. 20 U.S.C. § 1415(f). Any party aggrieved by the result of the due process hearing, if the hearing was conducted at the local level, may appeal to the State educational agency. 20 U.S.C. § 1415(g). If, however, the due process hearing was conducted by the State educational agency or reviewed by that agency on appeal from the local level, any aggrieved party may bring a civil action "in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2). A parent of a child with a disability, who has prevailed in an action under IDEA, may seek to collect attorney's fees pursuant to 20 U.S.C. § 1415(i)(3); however, jurisdiction of such actions is vested in "[t]he district courts of the United States." 20 U.S.C. § 1415(i)(3).

Plaintiffs contend that jurisdiction of their current action seeking attorney's fees and costs is clearly proper in federal district court, pursuant to 20 U.S.C. § 1415(i)(3). To the contrary, however, Defendant maintains that: (1) the White Earth Band of Chippewa ("the Tribe")[1] is a

---

[1] It is unclear to the Court whether Defendant's reference to "the Tribe" refers to the White Earth Band of Chippewa or to the Minnesota Chippewa Tribe, or if the distinction between the two is even significant for purposes of this motion. In keeping with the Court's Order, the Court respectfully requests the Defendant to clarify this distinction for the benefit of both the Plaintiffs and the Court.

necessary and indispensable party that was not named; and (2) the Tribe did not waive its sovereign immunity with respect to an action for attorney's fees under IDEA. While IDEA does contain several provisions and corresponding regulations that specifically govern, although without significant clarity or completeness, its application to Indian communities and their children, *see*, *e.g.*, 20 U.S.C. § 1411(c) & (i); 34 C.F.R. §§ 300.260, 300.715, the Act is silent as to the role of tribal courts. Moreover, the Court has not located any authority within this district or other jurisdictions that addresses the role of tribal courts in the enforcement of IDEA for Indian children. This Court cannot conclude, however, that this silence inevitably leads to the conclusion that their jurisdiction is irrelevant.

**2. Standard of Review**

Under Fed. R. Civ. P. 19, a person should be joined as a necessary party to a current action if: (1) the person is subject to service of process; (2) the person will not deprive the court of jurisdiction over the subject matter; (3) in the person's absence, complete relief cannot be accorded among those already parties; and (4) the person claims an interest relating to the subject of the action and disposition of the action in that person's absence may impair or impede the person's ability to protect that interest. Fed. R. Civ. P. 19(a). If a necessary party cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b). The court should consider: (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in

the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder. *Id.*

In general, when a parent brings an action on behalf of her child, challenging the provision of a free and appropriate education as required under the Act, the independent school district within which the child's school is located is considered a real party in interest to the action. *See Moubry v. Kreb*, 58 F. Supp. 2d 1041, 1051 (D. Minn. 1999). Under IDEA, an independent school district qualifies as a "local educational agency" ("LEA"), and it is the LEA, given its administrative and financial control over the individual school, that may be held legally accountable under the Act for the provision of the child's education. *See* 20 U.S.C. § 1401(15)(A) (LEA means "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public . . . schools . . ."). Notably, BIA-funded schools are considered to be LEAs for the limited purpose of ensuring their eligibility for programs provided under the Act; however, "the school shall not be subject to the jurisdiction of any State educational agency other than the Bureau of Indian Affairs." 20 U.S.C. § 1401(15)(C). The Court can find no provision in the Act or any corresponding regulation, however, that specifically designates a LEA for purposes of legal accountability for administration of the special education entitlement to Indian children.

Defendant argues that because the White Earth Reservation Business Committee receives and administers the funding issued by the Secretary of the Interior under the Act, it operates akin to an Independent School District and thus should be considered the LEA for Circle of Life.[2]

---

[2] Defendant also raises the issue of whether the BIA would be a necessary and (continued...)

Plaintiff's only response to this argument is that Circle of Life can adequately represent the interests of the tribe, and that to the extent that a judgment would adversely affect the tribe, the Court can fashion an appropriate judgment to protect the interests of the tribe.

The Court agrees with Defendant that while Circle of Life is immediately responsible for compliance with IDEA, just as each individual public school in any state would be, the administrative agency or functional LEA of Circle of Life is necessary for acceptance of legal responsibility under the Act. For all intents and purposes, it appears to the Court that the White Earth Reservation Business Committee operated as the LEA for Circle of Life, analogous to an Independent School District for its member schools. If a judgment for attorney's fees should be found appropriate in this action, then such a judgment would be paid from tribal funds. However, if the tribe is not named as a party, then it would be unable to protect its interest in satisfying such a judgment. Thus if an action is appropriately brought against the Circle of Life, then it follows that such action must also name the corresponding education administrative body, here the White Earth Reservation Business Committee.[3]

---

[2](...continued)
indispensable party to this action. Circle of Life has received funding through the BIA for purposes of providing appropriate special education pursuant to IDEA. Moreover, the BIA's Office of Indian Education Programs provided to BIA schools, such as the Circle of Life, the procedural safeguards under IDEA and the administrative processes for their enforcement, like those invoked by the Ms. Guthrie and Mr. Roy. Again the Court is unable to find any authority that addresses the role of the federal government and its agencies in an action such as this; however, it would appear that the BIA plays a role similar to that played by a state in the provision and enforcement of the IDEA entitlement. As such, the BIA does not operate as the LEA for Circle of Life, and thus would not be a necessary party to the instant action.

[3] While the White Earth Reservation Business Committee is the entity which has operated as the LEA for Circle of Life, the Committee has been represented to be just one arm of the tribe, and thus the Court will refer to the tribe as the necessary party.

Not only is the tribe a necessary party to this action, but the Court also finds it to be an indispensable party. If a judgment were to be rendered without the tribe named as a party, then undoubtedly both the tribe and Plaintiffs would be prejudiced; the tribal fisc would be compromised without the tribe having had the opportunity to protect its interests. Moreover, a judgment for the Plaintiffs would be virtually hollow because the very party that could render payment was left outside the controversy. Like other individual schools administered by an overarching LEA, the Circle of Life cannot adequately represent the interests of the tribe. As the Court will discuss further below, no alternative judgment could be crafted without unjustifiably and unacceptably compromising the sovereignty of the tribe. Finally, there is no convincing evidence or argument before the Court that an action for attorney's fees could not be brought in tribal court so that all the necessary and indispensable parties may be brought to the table for resolution. The Court summarily rejects the argument challenging the competency of the tribal court in interpreting the law necessary to determine this case.

While the tribe is a necessary and indispensable party to this action, the Court's analysis cannot stop there. The federal government and courts of the United States have long recognized Indian tribes as "distinct, independent political communities, retaining their original natural rights." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978) (quoting *Worcester v. Georgia*, 31 U.S. 515, 559 (1832)). Like other sovereign powers, Indian tribes generally possess common law immunity from suit. *Id.* at 58 (citations omitted). The limits of tribal sovereignty, however, are subject to the plenary power of Congress; and by that power, Congress may limit the scope of tribal sovereign immunity. *Id.* If Congress chooses to limit tribal sovereign immunity, however, such a waiver "cannot be implied but must be unequivocally expressed." *Id.* (citations omitted).

The Plaintiffs have not directed the Court to any provision within the IDEA that expressly waives the tribe's immunity to suit. Title 20 U.S.C. § 1415(i)(3) does not contain an explicit reference to the jurisdiction of federal courts over IDEA actions involving Indian tribes. Rather, it provides only a general statement that the federal courts shall have jurisdiction over IDEA actions for attorney's fees. As such, the Court finds no explicit, unequivocal waiver of tribal immunity.

The Court disagrees with Plaintiffs' contention that the tribe's acceptance of IDEA funds constitutes a waiver of tribal immunity. At most, the acceptance of funds constitutes an implied waiver; and in light of relevant case law, any type of implied waiver does not provide the requisite explicit and unequivocal waiver of a tribe's immunity from suit. Plaintiffs' argument is based on authority that pertains specifically to the sovereign immunity of states and not tribes. *See Bradley v. Arkansas Dept. of Ed.*, 189 F.3d 745 (8th Cir. 1999) (finding state waived 11th Amendment immunity by accepting federal funds under IDEA), *reversed on other but corroborating grounds by*, *Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000) (concluding state waived 11th Amendment immunity by accepting federal funds under Rehabilitation Act and statutory provision abrogating immunity and conditioning acceptance of funds on compliance with statutory prohibitions was valid exercise of Spending Clause). The scope and integrity of state and tribal immunity, however, are not necessarily perfect reflections of each other.

While the law defining one may serve to assist in understanding the scope of the other, the sovereign immunity of tribes and states must be treated and respected as distinct. As the U.S. Supreme Court stated in *Santa Clara*, a tribe maintains its sovereign immunity from suit, absent "any unequivocal expression of contrary legislative intent." Even in subsequent cases where the

Supreme Court and other courts appear to have called *Santa Clara* into question, their holdings do not change the Court's analysis here.

In *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505 (1991), the Supreme Court held that while Public Law 280 did not waive the tribe's immunity from suit, the tribe was not absolved from its duty under the law to collect state taxes for its sales to non-Indians. In his concurrence, Justice Stevens reconciled the *Oklahoma Tax* holding with *Santa Clara* by stating that "a tribe's sovereign immunity from actions seeking money damages does not necessarily extend to actions seeking equitable relief." *Id.* at 516. Following *Oklahoma Tax*, several courts have addressed the issue of whether a tribe has waived its immunity by participating in a statutory scheme within the context of the Indian Gaming Regulatory Act ("IGRA"). *See, e.g., Mescalero Apache Tribe v. State of New Mexico*, 131 F.3d 1379 (10th Cir. 1997); *Davids v. Coyhis*, 869 F. Supp. 1401 (E.D. Wis. 1994); *Maxam v. Lower Sioux Indian Community of Minnesota*, 829 F. Supp. 277 (D. Minn. 1993); *Ross v. Flandreau Santee Sioux Tribe*, 809 F. Supp. 738 (D.S.D. 1992). The courts finding a waiver of immunity, however, have found so for the limited purpose of determining compliance and corresponding injunctive relief, but not damages. *Compare Mescalero Apache*, 131 F.3d at 1385-86 (finding, due to tribe's participation under IGRA, waiver of immunity for limited purpose of determining compliance but not damages); *Maxam*, 829 F. Supp. at 281 (finding waiver of immunity for "the narrow purpose of determining compliance"); *Ross*, 809 F. Supp. at 744-45 (same), *with Davids*, 869 F. Supp. at 1406-09 (finding no waiver of immunity by participation under IGRA).

In light of the, albeit limited, case law discussed above, the Court does not find that the tribe here, by accepting funds under IDEA, has waived its immunity from the current action for attorney's fees. First, it is not clear to the Court that the holding of *Santa Clara* is not wholly

determinative of the outcome here and dictates that nothing but an express statement can waive tribal immunity. However, even to the extent that the holdings of *Oklahoma Tax* and the IGRA cases apply here as well, the Court's analysis remains the same because the instant action seeks damages, rather than compliance or additional injunctive relief as those cases found appropriate. Accordingly, the Court finds that there is neither an express nor valid implied waiver of the tribe's immunity to the current suit for attorney's fees.

In conclusion, because the Court finds (1) the tribe to be a necessary and indispensable party to the instant action; and (2) the tribe has not waived its sovereign immunity from the instant action, the instant action may not legitimately proceed in federal court. Accordingly, the current action cannot proceed in this Court. To the extent that Plaintiffs challenge whether the tribal court has jurisdiction over such an action or whether a tribal court can exert personal jurisdiction over Ms. Guthrie, this Court, in the interest of comity between sovereigns, defers such questions to the tribal court. *National Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 855-57 (concluding that comity and tribal self-government and self-determination require examination of tribal court jurisdiction to be conducted first by tribal court). Because the parties have already invested significant time and resources in commencing the action in this Court, the Court will stay the action here pending a determination by the tribal court.

For the reasons stated, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss or in the Alternative to Transfer the Case to the White Earth Band of Chippewa Tribal Court (Doc. No. 27) is **GRANTED**, such that the current action is **STAYED** until further notice of the Court, pending a decision/disposition in the case by the White Earth Band of Chippewa Tribal Court;

2. Defendant's Motion for Summary Judgment (Doc. No. 33) is **DENIED AS MOOT WITHOUT PREJUDICE**; and

3. Plaintiff's Motion for Summary Judgment (Doc. No. 24) is **DENIED AS MOOT WITHOUT PREJUDICE**.

Dated: November 21, 2001

DONOVAN W. FRANK
Judge of United States District Court